EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br><br>Maritza Ortiz Sánchez | 2024 TSPR 17<br><br>213 DPR ___ |

Número del Caso:  TS-19,522


Fecha:  1 de marzo de 2024


Oficina del Procurador General

      Lcda. Mabel Sotomayor Hernández
      Subprocuradora General

      Lcdo. Omar Andino Figueroa
      Subprocurador General

      Lcda. Yaizamarie Lugo Fontánez
      Procuradora General Auxiliar


Representante legal de Maritza Ortiz Sánchez:

      Lcda. Elba Nilsa Villalba Ojeda


Comisionada Especial:

      Lcda. Crisanta González Seda


Materia: Conducta Profesional – Suspensión inmediata e indefinida del ejercicio de la abogacía y la notaría por incumplir con el Canon 9 del Código de Ética Profesional.


Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br>Maritza Ortiz Sánchez | TS-19,522 |

**PER CURIAM**

En San Juan, Puerto Rico, a 1 de marzo de 2024.

Nuevamente, nos vemos obligados a ejercer nuestra facultad disciplinaria sobre un integrante de la abogacía por incumplir con los postulados éticos que, como mínimo, deben guiar la gestión de todo miembro de la profesión legal. En el día de hoy, intervenimos disciplinariamente con la Lcda. Maritza Ortiz Sánchez y decretamos su suspensión inmediata e indefinida de la práctica de la abogacía y notaría.

Veamos las circunstancias fácticas que sustentan nuestra determinación.

**I**

La Lcda. Maritza Ortiz Sánchez (licenciada Ortiz Sánchez) fue admitida al ejercicio de la abogacía el 27 de agosto de 2013 y al ejercicio de la notaría el 14 de octubre de 2013.

El pasado 18 de agosto de 2022, la licenciada Ortiz Sánchez compareció ante el Tribunal de Primera Instancia e instó un recurso de *Mandamus* por derecho propio. Eventualmente, la acción fue desestimada, por lo que la abogada decidió acudir al Tribunal de Apelaciones y apeló la decisión en su contra. No obstante, el foro intermedio emitió una *Sentencia* el 16 de diciembre de 2022 mediante la cual confirmó el dictamen apelado.[1]

Ahora bien, además de consignar los méritos jurídicos para su determinación, el tribunal intermedio hizo constar que el comportamiento de la licenciada Ortiz Sánchez durante el trámite apelativo debía ser examinado por este Tribunal.

Consecuentemente, la Secretaría del Tribunal de Apelaciones refirió a nuestra atención dicha *Sentencia*, así como también, un escrito presentado por la licenciada Ortiz Sánchez para que examináramos las manifestaciones de ésta última con relación a múltiples componentes del sistema judicial. En síntesis, la letrada manifestó que el proceso judicial era "*una farsa adjudicativa*", que las actuaciones judiciales de ciertos jueces eran una "*charlatanería*", que las determinaciones del Tribunal de Primera Instancia fueron por encargo, o que algunos jueces y compañeros abogados padecían de enfermedades mentales.

---

[1] Véase, *Ortiz v. Buono De Jesús*, KLAN202200891 (2022).

Una vez recibimos el referido, el asunto fue atendido como una *Queja*, por lo que le requerimos a la licenciada Ortiz Sánchez que contestara la misma, lo cual realizó.

No obstante, al examinar con detenimiento todos los documentos que acompañaron el referido, así como la contestación a la *Queja* que presentó la abogada, notamos que, particularmente, el contenido de este último escrito **carecía de claridad y tenía un grado elevado de incoherencia.** En atención a ello, procedimos a estudiar el expediente completo de la licenciada Ortiz Sánchez, lo cual incluyó el análisis de múltiples mociones presentadas por ésta ante los foros inferiores. Lo anterior, unido con el comportamiento desplegado por la promovida en procedimientos éticos anteriores y en uno que se encuentra aún pendiente ante nuestra consideración,[2] generaron interés en nuestra parte para constatar la capacidad de la letrada.[3]

Así las cosas, el 24 de febrero de 2023, emitimos una *Resolución* en la que ordenamos iniciar el procedimiento dispuesto en la Regla *15(c)* de nuestro Reglamento,[4] para que se hiciera una determinación sobre la capacidad mental de la licenciada Ortiz Sánchez. Posteriormente, el 11 de abril

---

[2] Queja AB-2021-145.

[3] Véase, *In re Ortiz Sánchez*, 201 DPR 765 (2019), donde la promovida fue suspendida por tres (3) meses ya que infringió los Cánones 9, 11, 35 y 38 del Código de Ética Profesional, 4 LPRA Ap. IX, al remitir al oficial jurídico de uno de los Jueces de este Tribunal copia de una moción en auxilio de jurisdicción que ella había presentado ese mismo día y por responder posteriormente a las advertencias del oficial jurídico a través de mensajes con un tono desafiante e irrespetuoso.

[4] 4 LPRA Ap. XXI-B.

de 2023, designamos a la Lcda. Crisanta González Seda como *Comisionada Especial* para que recibiera prueba y auscultara la capacidad mental de la licenciada Ortiz Sánchez y rindiera el correspondiente informe de conformidad con la Regla 15(c) del Reglamento de este Tribunal, *supra*.

Asimismo, concedimos un término para que tanto la letrada como la Oficina del Procurador General, designaran los peritos que conformarían el *Comité de Peritos* del procedimiento de evaluación. Se le otorgó un término de diez (10) días tanto al Procurador General como a la licenciada Ortiz Sánchez para que designaran a su perito psiquiatra. Se les apercibió, además, de que, si no cumplían dentro del término otorgado, la Comisionada Especial lo haría por ambos.

Igualmente, se orientó y apercibió a la licenciada Ortiz Sánchez sobre lo dispuesto por la Regla 15(e) de nuestro Reglamento referente a que, **si se negaba a someterse a un examen médico realizado por los peritos admitidos, tal negativa se consideraría como evidencia *prima facie* de su incapacidad mental.**

Así las cosas, el Procurador General designó al Dr. Raúl López como su facultativo médico especializado en psiquiatría. Por su parte, la licenciada Ortiz Sánchez compareció y, en síntesis, arguyó que no había podido encontrar un psiquiatra que la evaluara en el procedimiento, por lo que solicitó una prórroga. Asimismo,

solicitó la exclusión del perito del Estado por un presunto contacto previo con este que le afectaría emocionalmente. Luego de examinar la réplica del Procurador General sobre este particular, la Comisionada Especial determinó que no procedía la exclusión del perito.

Transcurrido el término concedido para la designación de psiquiatras, y ante las dificultades que expresó la licenciada Ortiz Sánchez para escoger o conseguir un doctor que formara parte del panel, la Comisionada Especial designó a la Dra. Dor Marie Arroyo Carrero como la perito psiquiatra que representaría a la licenciada Ortiz Sánchez. En igual sentido, se designó a la Dra. Cynthia Casanova Pelosi como perito en representación de la Comisionada Especial.

Una vez se completó el panel de evaluadores médicos, **<u>se le notificó a la licenciada Ortiz Sánchez los diferentes días y horas en las cuales debía acudir a los diferentes doctores del panel para la correspondiente evaluación</u>**.

Cabe destacar que la licenciada Ortiz Sánchez **no asistió a algunas de las citas programadas para su evaluación y no brindó justificación alguna**. Varias citas fueron recalendarizadas y notificadas a la letrada para que posteriormente compareciera, lo cual realizó. De igual forma, **en múltiples ocasiones se le apercibió sobre lo que dispone la Regla 15(e) de nuestro Reglamento respecto a que, si se negaba a someterse a un examen médico realizado**

**por los peritos admitidos, tal negativa se consideraría como evidencia prima facie de su incapacidad mental.**

Posteriormente, el 13 de junio de 2023, la Comisionada Especial le ordenó a la licenciada Ortiz Sánchez que en un término de diez (10) días, entregara copia de ciertos expedientes médicos a los peritos evaluadores, según fuese solicitado por estos. Nuevamente, se le apercibió sobre lo que podría acarrear el incumplimiento con esa orden. La licenciada Ortiz Sánchez **se negó a entregar los expedientes médicos que le fueron solicitados por los peritos para completar su evaluación**, por lo que estos quedaron impedidos de completar su evaluación y de redactar los correspondientes informes.

Eventualmente, la letrada compareció a través de un escrito en el que entre otras cosas, adujo que el acceso a la totalidad de sus expedientes médicos constituiría una intromisión indebida a su derecho a la intimidad, y que ella puede elegir con quién comparte ese tipo de información. Por su parte, la Comisionada Especial le indicó que los doctores que pretenden estudiar el historial médico de la abogada configuran un panel de peritos psiquiatras y que no existía impedimento para que éstos se comunicaran sobre su encomienda, sin que ello afectase su objetividad e independencia de criterio profesional al momento de evaluar a la licenciada Ortiz Sánchez. Además, que en este proceso se protege el derecho a la privacidad e

intimidad de la licenciada Ortiz Sánchez, ya que los expedientes médicos que se supone le entregue a los peritos no pueden utilizarse para ningún otro propósito que no sea su revisión en este proceso. En consecuencia, la Comisionada Especial mantuvo su orden de que la abogada tenía que proveer los expedientes solicitados por los doctores e incluyó, nuevamente, las advertencias hechas previamente.

El 10 de julio de 2023, la doctora Casanova Pelosi envió un mensaje en el que indicó la importancia del expediente médico ante la negativa de la licenciada Ortiz Sánchez de informar su diagnóstico y tratamiento. Señaló que esa información era necesaria para rendir un informe final. Este mensaje se hizo formar parte del expediente.

Ese mismo día, la Comisionada Especial emitió una *Resolución* en la que resumió las órdenes dirigidas a la licenciada Ortiz Sánchez y su continuo incumplimiento con la entrega de los expedientes. Asimismo, dispuso que los peritos debían redactar los informes con la información que tuviesen disponible.

Así las cosas, el 12 de septiembre de 2023 se celebró una vista evidenciaria.[5] Ulteriormente, el 6 de diciembre de 2023, la Comisionada Especial nos rindió su *Informe*.

---

[5] Es pertinente señalar que la licenciada Ortiz Sánchez, presentó una demanda ante la Corte de Distrito Federal para Puerto Rico, el 11 de septiembre de 2023 contra la Comisionada Especial y el panel de psiquiatras. Las alegaciones que se presentan en la demanda se

De este surge que dos (2) de los miembros del panel rindieron informes escritos luego de realizar entrevistas presenciales a la licenciada Ortiz Sánchez, entiéndase, los doctores Casanova Pelosi y López. **Estos informaron haber solicitado expedientes médicos a la abogada que no pudieron revisar debido a la negativa y renuencia de la abogada en entregarlos.**

Por su parte, la doctora Arroyo Carrero no rindió su informe **porque no tuvo disponible el historial médico de la licenciada Ortiz Sánchez, a pesar de haberlo solicitado.**

Además, surgió que, en efecto, la licenciada Ortiz Sánchez <u>**contaba con un expediente médico que rehusó entregar a los tres miembros del panel de psiquiatras**</u>. **Como consecuencia de esta negativa, no se pudo hacer un diagnóstico sobre si existe o no una condición mental** que impida a la abogada mantener el patrón de conducta profesional que debe observar según los cánones de ética profesional de los abogados. De igual modo, se indicó que al no tener un historial longitudinal y no conocer cómo ella ha funcionado ni qué información se ha obtenido de su comportamiento a lo largo de los pasados años, era imposible que los peritos pudieran contestar si está o no incapacitada.

---

refieren a los procedimientos al amparo de la Regla 15 del Reglamento de este Tribunal.

En virtud de lo anterior, **la Comisionada Especial concluyó que la licenciada Ortiz Sánchez no colaboró con las peticiones de información** para su evaluación por parte de los miembros del Comité de Psiquiatras y que se ausentó de citas de evaluación, sin causa que lo justificara. Ello ocasionó que los miembros del panel de psiquíatras no pudieran completar su encomienda y realizar una evaluación completa.

## II.

### A. Regla 15 del Reglamento de este Tribunal

La Regla 15 de nuestro Reglamento, *supra*, cumple con el propósito de establecer un procedimiento para separar indefinidamente a un abogado o una abogada del ejercicio de la abogacía cuando no pueda desempeñarse de manera competente y adecuada por alguna condición mental o emocional.[6] En esos casos, este Tribunal designa a un Comisionado o una Comisionada Especial quien se encargará de recibir, investigar y evaluar prueba sobre la incapacidad mental del abogado o la abogada.[7]

Como parte del procedimiento, se designan tres peritos psiquiatras para que examinen al abogado o la abogada y rindan sus respectivos informes con sus conclusiones. Estos peritos son designados sucesivamente por el Comisionado o la Comisionada Especial, por el Procurador o Procuradora

---

[6] *In re Pagán Hernández*, 207 DPR 728 (2021); *In re Chiqués Velázquez*, 201 DPR 969, 971 (2019).
[7] *In re Rodríguez Torres*, 210 DPR 8, 13 (2022).

General y por el querellado o querellada.[8] En aquellos casos en los que la parte querellada no realice su designación dentro del término que le provee el Comisionado o Comisionada Especial, nuestro *Reglamento* provee para que estos últimos realicen una designación *motu proprio* del psiquiatra que ha de representar al querellado.[9]

Ahora bien, es meritorio señalar que la Regla 15(e) del Reglamento de este Tribunal **establece una presunción de incapacidad mental** contra el abogado o la abogada que se **niegue a someterse a los distintos trámites evaluativos** comprendidos y ordenados por el panel de psiquiatras. En particular, el inciso (e) de la mencionada regla dispone lo siguiente:

> Si durante el procedimiento indicado en el inciso (c) de esta regla el abogado querellado o la abogada querellada **se niega a someterse al examen médico ante los siquiatras designados o las siquiatras designadas, ello <u>se considerará como prueba *prima facie* de su incapacidad mental</u>**, por lo que podrá ser suspendido o suspendida preventivamente del ejercicio de la profesión.[10] (Negrillas y subrayado suplido)

Conforme con lo anterior, y amparados en nuestro poder inherente para regular la profesión de la abogacía y la notaría en Puerto Rico, cuando la condición mental o emocional de un letrado o una letrada le impida ejercer cabal y adecuadamente todas las funciones y los deberes propios de la práctica de la abogacía, será menester

---

[8] *In re Pagán Hernández*, supra; *In re Rodríguez Torres*, supra.
[9] Regla 15(c) del Reglamento del Tribunal Supremo, 4 LPRA Ap. XXI-B.
[10] Regla 15(e) del Reglamento del Tribunal Supremo 4 LPRA Ap. XXI-B.

suspenderle indefinidamente del ejercicio de la profesión.[11] Ahora bien, esta suspensión indefinida no representa una sanción disciplinaria, sino que constituye únicamente una medida de protección social.[12]

## B. Canon 9 del Código de Ética Profesional

Desde el momento preciso en que cada abogado presta juramento como tal y es admitido a la profesión de la abogacía, este se compromete a fijar su conducta íntimamente a las normas establecidas en el Código de Ética Profesional.[13] El propósito de este cuerpo rector recae en "promover el desempeño personal y profesional de los miembros de la profesión legal de acuerdo con los más altos principios de conducta decorosa, lo que, a su vez, resulta en beneficio de la profesión, la ciudadanía y las instituciones de justicia".[14] Asimismo, hemos señalado que este deber se hace extensivo "no solo a la esfera de la litigación de causas, sino a la jurisdicción disciplinaria de este Tribunal".[15]

El Canon 9 del Código de Ética Profesional, *supra*, codifica el mandato ético que obliga a todo abogado a atender y obedecer las órdenes del Tribunal y las de cualquier otro foro al que se encuentre obligado a

---

[11] *In re Rodríguez Torres*, supra; *In re Pagán Hernández*, supra.
[12] Íd.
[13] 4 LPRA Ap. IX.
[14] *In re Torres Rivera*, 2022 TSPR 107.
[15] *In re Medina Torres*, 200 DPR 610, 628 (2018).

comparecer.[16] Particularmente, le impone a los letrados "el deber de observar para con los tribunales una conducta que se caracterice por el mayor respeto".[17] Cuando se trata de procesos disciplinarios, los integrantes de la profesión legal tienen el deber de responder diligente y oportunamente a nuestros requerimientos y órdenes.[18]

Por ello, un abogado que desatiende los requerimientos realizados en el curso de un procedimiento disciplinario denota "indisciplina, desobediencia, displicencia, falta de respeto y contumacia hacia las autoridades, y revela una gran fisura del buen carácter que debe exhibir todo miembro de la profesión legal".[19]

Así, pues, no podemos tomar livianamente la actitud de indiferencia a la autoridad de este Tribunal. Lo anterior resulta causa suficiente para decretar la suspensión inmediata de cualquier abogado.[20]

## III.

Tras evaluar el *Informe* de la Comisionada Especial, en conjunto con la evidencia que consta en el expediente del caso, surgen varios asuntos que llaman la atención de este Tribunal, particularmente, con la disposición o

---

[16] *In re Meléndez Mulero*, 208 DPR 541 (2022); *In re Valentín Figueroa*, 2021 TSPR 139, 208 DPR Ap. (2021)

[17] *In re Torres Rivera*, supra.

[18] *In re Lajara Radinson*, 207 DPR 854 (2021); *In re Colón Rivera*, 206 DPR 1073 (2021).

[19] *In re Jiménez Meléndez*, 198 DPR 453, 457 (2017).

[20] Íd.

colaboración de la licenciada Ortiz Sánchez con el proceso de evaluación de capacidad que se le realizaba.

En primer lugar, los tres (3) psiquiatras que tenían a su haber la evaluación clínica de la letrada, requirieron la entrega del expediente médico de ésta que obra en el Hospital de Veteranos, donde por los pasados diez (10) años ha recibido tratamiento clínico. Sin embargo, la licenciada Ortiz Sánchez **se negó constantemente a entregar el expediente solicitado por los peritos** bajo el argumento de que ventilar dicha información "constituiría una intromisión indebida en su derecho a la intimidad".[21] De esta forma, reafirmó que ella podía "ventilar sus intimidades solamente con las personas que ella escog[iera]".[22]

De los miembros del panel de psiquiatras, dos (2) rindieron informes luego de realizar entrevistas presenciales a la licenciada Ortiz Sánchez, no obstante, la negativa a entregar la información solicitada, evidentemente, entorpeció la labor encomendada al panel de peritos. En el caso de la doctora Casanova Pelosi, su informe expresó que **no pudo realizar un diagnóstico sobre si existe o no una condición mental** que impida a la abogada desempeñarse como este Tribunal espera de todos sus miembros **debido a que esta no colaboró con el proceso, pues**

---

[21] *Informe* de la Comisionada Especial, pág. 14.
[22] Íd.

**se negó a entregar el expediente antes mencionado**, el cual era indispensable para obtener una conclusión clínica responsable e informada. A similar conclusión llegó el doctor López, perito del Procurador General, quien expresó que, al no tener los informes solicitados a la abogada, no podía comprobar el estado mental de manera longitudinal.

Por su parte, la doctora Arroyo Carrero, perita asignada a la letrada, no rindió su informe, **pues no tuvo disponible el historial médico de la licenciada Ortiz Sánchez <u>a pesar de haberlo requerido</u>**. La doctora explicó que le realizó una evaluación a la abogada mediante una entrevista presencial, sin embargo, ello no era suficiente para emitir un diagnóstico conclusivo. Expresó lo anterior, pues tenía que evaluar el expediente clínico previo de la licenciada Ortiz Sánchez ya que esta se encontraba o había estado, bajo tratamiento clínico y que la negativa de la promovida para proveerle su trasfondo médico le impedía tomar una decisión definitiva. De esta forma, y en cumplimiento con las guías para una mejor práctica de la psiquiatría, tenía que evaluar la data objetiva, por lo que no rindió un informe.

Aunque del expediente y de las opiniones de los peritos surge que la licenciada Ortiz Sánchez no presenta problemas en ciertos aspectos, no es menos cierto que "hay

áreas en que algunos de los peritos tienen preocupación".[23] Un ejemplo de ello es la constante y persistente obstinación de retar a la autoridad y de ir en contra del ordenamiento social, lo que, a juicio de los peritos, en el futuro podría ser eje de controversia. Una muestra de lo anterior es el hecho de que la licenciada Ortiz Sánchez fue citada en múltiples ocasiones para que compareciera a ser evaluada por los psiquiatras y "básicamente no asistió [y] tampoco dio ninguna razón para no hacerlo".[24] Otro ejemplo es que la letrada no presentó los documentos médicos que le fueron exigidos como parte de su evaluación, a pesar de ser apercibida por los propios doctores de que su futuro como abogada dependía de ello.[25]

Como mencionamos anteriormente, <u>la falta de cooperación de la licenciada Ortiz Sánchez ha obstaculizado la labor del comité de peritos psiquiatras al punto de evitar que estos puedan emitir una conclusión categórica y responsable sobre si ésta se encuentra incapacitada para ejercer como abogada</u>. Los doctores carecen de un historial longitudinal —*atribuible a su incumplimiento reiterado*— y desconocen cómo la licenciada Ortiz Sánchez ha funcionado

---

[23] Íd., pág. 28.

[24] *Minuta* de la vista evidenciaría del 12 de septiembre de 2023 citando al Dr. Raúl López.

[25] Otra muestra de lo convulso que la letrada ha hecho este proceso por su constante reto a la autoridad, es que su representación legal solicitó el desglose de todas las mociones que la licenciada Ortiz Sánchez presentó por derecho propio. De hecho, tan reciente como en diciembre del año pasado, su representante legal solicitó ser relevada como abogada de la promovida y adujo que diferencias irreconciliables en cuanto al manejo del caso la obligaban a realizar ese pedido.

en determinadas instancias o qué información se ha obtenido de su comportamiento a lo largo de los años.[26]

Nuestro Reglamento es claro al establecer que **existe una presunción de incapacidad mental en todos aquellos casos en que un abogado o abogada se niegue a someterse a los trámites provistos reglamentariamente por este tipo de procedimientos**. Queda claro que la licenciada Ortiz Sánchez no ha colaborado con las importantes peticiones de información médica que le han requerido los miembros del *Comité de Psiquiatras* y que, además, se ausentó de citas de evaluación sin causa que lo justificara. Ello, sin lugar a duda, ocasionó que los peritos no pudieran completar su encomienda a cabalidad y se vieron impedidos de realizar una evaluación completa. Lo anterior resulta suficiente para separar a la licenciada Ortiz Sánchez del ejercicio de la profesión legal.

Ahora bien, aun si asumiéramos que la promovida se encuentra capacitada para desempeñarse como abogada y obviáramos la presunción que establece nuestro Reglamento, la continua desobediencia a las órdenes de este Tribunal, a través de los requerimientos y advertencias de la Comisionada Especial y los miembros del panel de peritos psiquiátricos, bastaría para que, igualmente, suspendiéramos a licenciada Ortiz Sánchez de la abogacía y la notaría. Si bien la licenciada Ortiz Sánchez plantea que

---

[26] Íd., pág. 29.

le cobija un derecho sobre su intimidad en cuanto a los documentos que versan sobre su salud, la realidad es que esa información es necesaria y pertinente para dilucidar lo dispuesto en la Regla 15(c) del Reglamento de este Tribunal. Además, la privacidad e intimidad de la abogada se encuentra protegida de manera absoluta y la prueba que durante el proceso se presente goza de estricta confidencialidad. Así se le expresó en múltiples ocasiones. La conducta desplegada por la licenciada Ortiz Sánchez muestra un alto grado de desidia e indiferencia. El comportamiento de la letrada equivale a una infracción al Canon 9 del Código de Ética Profesional, *supra.*

Evaluado y ponderado el derecho aplicable, decretamos la suspensión de la licenciada Ortiz Sánchez de manera inmediata e indefinida del ejercicio de la abogacía y la notaría.

**IV.**

Consecuentemente, le ordenamos notificar a todos sus clientes de su inhabilidad para continuar con su representación y a devolverles tanto los expedientes de los casos pendientes como los honorarios recibidos por trabajos no rendidos. Además, deberá informar inmediatamente de su suspensión a los distintos foros judiciales y administrativos en los que tenga algún asunto pendiente y acreditar ante este Tribunal el cumplimiento con lo anterior, incluyendo una lista de los clientes y foros a

quienes le notificó de su suspensión, dentro del término de treinta (30) días, a partir de la notificación de esta Opinión *Per Curiam* y su correspondiente Sentencia. No hacerlo pudiera conllevar que no se le reinstale al ejercicio de la abogacía de solicitarlo en el futuro.

De igual forma, el Alguacil de este Tribunal deberá incautar inmediatamente la totalidad de la obra protocolar y sello notarial de la señora Ortiz Sánchez y entregarlos al Director de la Oficina de Inspección de Notarías para el correspondiente examen e informe. En virtud de esta suspensión, la fianza que garantiza las funciones notariales queda automáticamente cancelada. No obstante, la fianza se considerará buena y válida por tres (3) años después de su terminación, en cuanto a los actos realizados durante el periodo en que estuvo vigente.

Se dictará Sentencia de Conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Maritza Ortiz Sánchez

TS-19,522

**SENTENCIA**

En San Juan, Puerto Rico, a 1 de marzo de 2024.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte de la presente *Sentencia*, decretamos la suspensión indefinida e inmediata del ejercicio de la abogacía y la notaría de la Lcda. Maritza Ortiz Sánchez.

A la luz de lo anterior, le imponemos a la letrada el deber de notificar a todos sus clientes de su inhabilidad de seguir representándolos, devolverles cualesquiera honorarios recibidos por trabajos no realizados e informar oportunamente de su suspensión indefinida a los foros judiciales y administrativos donde tenga asuntos pendientes.

Deberá, además, acreditar y certificarnos el cumplimiento de estos deberes incluyendo una lista de los clientes y los foros a quienes le haya notificado de su suspensión, dentro del término de treinta (30) días, a partir de la notificación de esta *Opinión Per Curiam* y *Sentencia*. No hacerlo, pudiera conllevar que no se le reinstale al ejercicio de la profesión de solicitarlo en el futuro.

De igual forma, el Alguacil de este Tribunal deberá incautar inmediatamente la totalidad de la obra protocolar y sello notarial de la señora Ortiz Sánchez y entregarlos al Director de la Oficina de Inspección de Notarías para el correspondiente examen e informe. En virtud de esta suspensión, la fianza que garantiza las funciones notariales queda automáticamente cancelada. No obstante, la fianza se considerará buena y válida por tres (3) años después de su terminación, en cuanto a los actos realizados durante el periodo en que estuvo vigente.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco no interviene. El Juez Asociado señor Kolthoff Caraballo no intervino.


                         Javier O. Sepúlveda Rodríguez
                         Secretario del Tribunal Supremo